# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA ROBINETTE, | ) | CASE NO. 5:19-cv-2476 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| PROMEDICA PATHOLOGY LABS, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiff, Brenda Robinette ("Robinette"), brings this action against defendants, Promedica Pathology Labs ("Promedica") and Lifecare Family Health & Dental ("Lifecare") (collectively the "defendants"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. (Doc. No. 1, complaint ["Compl."].) Robinette moves to proceed with this action *in forma pauperis* (Doc. No. 2), and that motion is granted.

For the reasons that follow, this case is dismissed.

## I. BACKGROUND

In her complaint, Robinette complains of virtually everything related to her employment with the defendants, beginning from the time she first interviewed for a full-time phlebotomy position with Promedica "[o]n or about February 1st-28, 2017." (*Id*. at 9[1].) She complains about the assignments, hours, and locations she was offered and generally complains she did not receive the positions, locations, and hours she desired because the "needs" of white phlebotomists were being met but hers were not. (*Id*. at 9, 10, 12.) Robinette's troubles began when the position Promedica offered her was "put on hold" because another phlebotomist (who was Caucasian) needed the position "due to the physician at the office [where] she had been placed having a brain aneurysm of some sort." (*Id*. at 9.)

Soon thereafter, however, Robinette was offered a part-time position at Lifecare, a community clinic in her hometown. Having previously been a Lifecare patient herself and experiencing "issues with rude staff[,]" Robinnete reluctantly accepted the position. (*Id.*) She worked at Lifecare "for a full year as a phlebotomist/[l]abtech[,]" eventually earning a full-time position with benefits. (*Id.* at 9–10.) But she experienced "many" issues during her tenure. While Robinette asserts some general work-related grievances, most of her issued related to a white co-worker named Kallie. (*Id.* at 10.) Kallie allegedly harassed Robinette and "made r[u]de and racial slurs about [her] music." (*Id.*) Robinette alleges that she expressed "concerns of harassment as well as the clinic[']s bed bug problem" but her complaints were not addressed. (*Id.*) Robinette asked to be transferred to a different clinic but the only available position was

---

[1] The Court cites to the page numbers assigned by the electronic filing system, since Robinette has failed to comply with the requirement to set forth her allegations "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). All page numbers refer to the page identification number generated by the Court's electronic docketing system.

given to "another b[la]ck phleb[otomist]." (*Id.*) Sometime later, Robinette asked her supervisor about a position that "was 10 minutes from [her] home," but was told that the position "was given to a phleb[otomist] with more [seniority]…." (*Id.* at 11–12.) Robinette claims that she "later learned" that the position was filled by a "younger white phlebotomist." (*Id.* at 12.)

After working at Lifecare for a year, Robinette was disciplined for allegedly being rude to a patient. (*Id.* 11.) Robinette contacted the human resources department ("HR") regarding the discipline and she ultimately "contacted EEOC [to] file [a] complaint." (*Id.*) After filing her EEOC charge, Robinette had another meeting with HR, this time to discuss a second patient complaint and Robinette's general "rude tone." (*Id.*) Robinette asserts that she had three additional meetings with HR, during which times she was "harassed and intimidated by HR…." (*Id.*) Ultimately, Lifecare demoted Robinette "to prn with no benefits due to complaints of [her] skills, as well as [her] hygiene" at this time Lifecare told her "they would call [her] if they had work." (*Id.*) It appears Lifecare never called.

After her demotion, Robinette went for "weeks without calls" for other work until Promedica offered her a part-time position at another clinic, Astute Medical. Though the position started as part-time, Robinette was eligible to earn full-time status after six months. (*Id.*) Due to her part-time status, Robinette requested to work additional hours at various clinics. (*Id.* at 12.) She was offered, and accepted, an additional shift at another clinic. (*Id.* at 12.) But Robinette claims she "was exposed to racism and cruel treatment the first day [she] went there to train." (*Id.*) Meanwhile, there were additional complaints about Robinette's job performance including, "missing [blood] tubes at [the] end of [the] day, drawing [blood from] patient[s] in their wrist[s], and other obscured [sic] things." (*Id.*) But Robinette, nevertheless, "received [a] new job offer"

3

for an additional eight hours per week. (*Id.*) Robinette rejected the offer, however, "due to inconvenience in drive [sic]." (*Id.*) Ultimately, Promedica terminated Robinette's employment due to complaints about her performance. (*Id.*)

Claiming she was "discriminated against due to [her] race and color" and "retaliated against every time [she] exercised her rights to speak out or complain," Robinette seeks $100,000 in damages from Promedica and $50,000 from Lifecare. (*Id.*)

## II. DISCUSSION

### A. Standard of Review

*Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers" and must be liberally construed. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (*pro se* complaints are entitled to liberal construction) (citations omitted). Nevertheless, courts are not required to conjure unpleaded facts or construct claims on plaintiff's behalf. *See Kamppi v. Ghee*, 208 F.3d 213 (table), 2000 WL 303018, at *1 (6th Cir. Mar. 14, 2000); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Federal district courts are expressly required, under 28 U.S.C. § 1915(e)(2)(B), to review all *in forma pauperis* complaints filed in federal court and to dismiss before service any such complaint that the court determines is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). The standard for dismissal under Rule 12(b)(6) also applies to dismissal under § 1915(e)(2)(B). *Id.* at 470–71 (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d

868 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) governs dismissal under § 1915(e)(2)(B)). Therefore, to survive dismissal under § 1915(e)(2)(B), Robinette's complaint must set forth sufficient facts to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

## B. Analysis

### a. Robinette's Discrimination Claim

Even if the Court construes Robinette's claims liberally, in the light most favorable to her, she fails to state a plausible claim for relief. Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a Title VII claim by presenting direct evidence of discrimination by the defendant, or by showing the existence of circumstantial evidence that creates an inference of discrimination. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Homes-Naples v. Girard Bd. of Educ.*, 212 F. Supp. 2d 743, 748 (N.D. Ohio 2001) (citation and quotation marks omitted).

Robinette has not alleged direct evidence of discrimination in connection with any alleged adverse employment actions. Her own general conclusions and assertions of racism and discrimination made in her pleading do not constitute direct evidence. Direct evidence is evidence that "if believed, requires a conclusion by the fact-finder that unlawful discrimination

was at least a 'motivating factor' for [an] employer's actions." *Younis*, 610 F.3d at 363 (citation omitted). The only direct evidence of race discrimination even remotely suggested on the face of Robinette's pleading is one racially-disparaging comment made to her by a co-worker, Kallie, regarding her music while she was working at Lifecare. Such a remark, however, does not constitute direct evidence of discrimination by either defendant. *See id.* (holding that a few offensive remarks made to the plaintiff by his flight instructor and subordinate first officer were insufficient to constitute direct evidence of discrimination).

Further, Robinette's allegations are insufficient to demonstrate a Title VII claim through circumstantial evidence. "To establish a claim of discrimination indirectly, *i.e.*, by circumstantial evidence, a plaintiff must demonstrate (1) that [s]he is a member of a protected class; (2) that [s]he suffered an adverse employment action; (3) that [s]he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than [s]he." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). The fourth element requires a plaintiff to show she was treated more harshly than an employee outside of her protected class who is similarly-situated to her "in all relevant respects." *Dickens v. Interstate Brands Corp.*, 384 F. App'x 465, 468 (6th Cir. 2010) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)). In other words, employees to whom the plaintiff seeks to compare herself must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

At the outset, the Court recognizes that Robinette was not required to plead facts sufficient to establish a *prima facie* case of discrimination under *McDonnell Douglas* and its progeny. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012.) Indeed, such a showing may be difficult to prove "before discovery has unearthed the relevant facts and evidence…." *Id.* at 609. However, the "plausibility" standard established in *Twombly* and *Iqbal* "applies to causation in discrimination cases." *Id.* at 610. While a complaint "need not present 'detailed factual allegations,' it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw [a] reasonable inference' [of discrimination]…." *Id.* (quoting *Iqbal*, 556 U.S. at 679.). In other words, Robinette was required to plead sufficient facts for this Court to reasonably infer that the defendants discriminated against her "*because of* [her] race, color, religion, sex, or national origin…." 42 U.S.C. 2000e-2(a)(1) (emphasis added). She has not met this pleading standard. Robinette's discrimination claims appear to be based on two theories: (1) treating "white employees with favoritism and priority," (Compl. at 12) and (2) wrongful termination (*Id.* at 13.)

Robinette's arguably strongest claim, though still notably deficient, relates to disparate treatment. A common theme throughout Robinette's complaint relates to "white phlebotomists['] needs being met over [hers]." (Compl. at 9, 10, 12.) Assuming that is true—*i.e.* white phlebotomists' needs were met, while Robinette's were not—Robinette does not even attempt to establish a causal connection between her race and the alleged disparate treatment. In every instance, her inferences are speculative and conclusory. *See Tucker v. Victor Gelb, Inc.*, No. 98-4070, 1999 WL 801544, at *1 (6th Cir. Sept. 28, 1999) ("Conclusory allegations of discrimination are insufficient to state a Title VII claim."). For example, when Robinette's initial

job offer from Promedica was "put on hold," Robinette concludes, without more, that it must have been due to race, wholly ignoring the fact that the "white phleb" who filled the position was a *current* Promedica employee who needed a new position "due to the physician at the office she had been placed having a brain aneurism…." (Compl. at 9.) In another instance, Robinette claims that a white phlebotomist "worked … on Wednesdays to get her 40 hours[,]" while Robinette was a part-time employee. (*Id.* at 10.) Again, that may be true, but there is no indication that race played any role in the employees' disparate hours. In fact, Robinette ultimately received the Wednesday shift and became a full-time employee. (*Id.*)

Finally, Robinette claims that, when she inquired about a full-time position that was "10 minutes from [her] home," she was told that the position was filled by someone who had more seniority. (*Id.* at 11–12.) She later learned, however, that the position was filled by a "younger white phlebotomist." (*Id.* at 12.) As an initial matter, Robinette does not claim to have applied for this position—she merely "told" her supervisor that she "wanted that position." (*Id.* at 11.) And a plain reading of the complaint indicates that the position was already filled at the time Robinette expressed interest. At the time of her inquiry, Robinette's supervisor told her the position "*was given* to a phleb with more [seniority]…." (*Id.* (emphasis added).) Thus, to the extent Robinette attempts to imply that she did not receive the position due to her race, (1) she does not allege facts to support such an implication, and (2) there was no adverse employment action because the position was filled before Robinette even "told" her supervisor that she was interested. (*Id.* at 11–12.) Robinette's discrimination claims based on disparate treatment—or, as Robinette asserts, "favoritism and priority"—never rise above the speculative level and, thus, cannot support a plausible Title VII claim.

Regarding Robinette's discrimination claim based on wrongful termination[2], these claims too must fail as they are bolstered by nothing but conjecture and suppositions. There are simply no facts to support an inference that Robinette was terminated due to her race. Robinette had numerous meetings with HR to address patient complaints, her alleged rude demeanor, and questions about her skillset. (Compl. at 11, 12.) And while the Court presumes that Robinette disputes the validity of these complaints, there is simply no support for an inference that such complaints were a mere pretext and Robinette was, instead, terminated because of her race. Scouring the complaint, there are simply no facts that create a plausible causal link between Robinette's termination—or any other alleged adverse employment action—and the defendants' alleged discrimination. As such, the Court, informed by its judicial experience and common sense, cannot draw reasonable inferences that the defendants discriminated against Robinette *because of* her race.[3]

### b. Robinette's Retaliation Claim

The Court likewise finds Robinette's complaint insufficient to assert a plausible Title VII retaliation claim. Title VII's retaliation provision makes it unlawful for an employer to discriminate against an employee because she has opposed a practice made an unlawful employment practice, or because she has "made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §

---

[2] In her complaint, Robinette does not explicitly base her discrimination claim on wrongful termination. However, due to her *pro* se status, the Court acknowledges that Robinette attempts to assert such a claim.

2000e–3(a). In order to establish a *prima facie* retaliation claim, an employee must show that: "(1) [s]he engaged in protected conduct, (2) the employer knew that [s]he had exercised h[er] protected rights, (3) the employer took an adverse employment action against h[er], and (4) there was a causal connection between h[er] protected activity and the adverse employment action." *Paasewe v. Action Grp., Inc.*, No. 12–3701, 2013 WL 3722090, at *4 (6th Cir. July 17, 2013). "To establish a causal connection between the protected activity and adverse employment action, a plaintiff must present evidence 'sufficient to raise [an] inference that her protected activity was likely the reason for the adverse action.'" *Sosby v. Miller Brewing Co.*, 211 F. App'x 382, 387 (6th Cir. 2006) (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (further citation omitted)).

Again, Robinette was not required, at this stage, to establish a *prima facie* retaliation claim. But she was required to meet minimum pleading standards, which she failed to do. It is clear that Robinette filed various complaints of discrimination with the EEOC. (*See* Compl. at 11–12, 14–18.) But she has not alleged facts plausibly suggesting a causal link between those complaints—or any other protected conduct she contends to have engaged in—and any of the adverse actions she claims were taken against her. While it is true that Robinette alleges she "was called to meetings [with HR] multiple times" after she filed her EEOC charge, she asserts no facts to suggest the meetings were the result of her EEOC filing. Similar meetings occurred

---

[3] The Court notes, but does not rely upon the fact, that this is the ninth discrimination lawsuit that Robinette has filed against hospitals and clinics throughout Ohio. *See Robinette v. Suburban Med. Lab*, No. 5:05-cv-0744-NAV (N.D. Ohio); *Robinette v. Pro Lab Clinical Labs.*, No. 5:15-cv-1504-SL (N.D. Ohio); *Robinette v. Cleveland Clinic Found.*, No. 1:16-cv-3097 (N.D. Ohio); *Robinette v. Union Hosp.*, No. 5:16-cv-1485-SL, 2016 WL 8487978, at *1 (N.D. Ohio Sept. 28, 2016); *Robinette v. CSL Plasma*, No. 5:17-cv-2665 (N.D. Ohio); *Robinette v. Quest Diagnostics*, No. 2:15-cv-173, 2015 WL 3645822, *1 (S.D. Ohio May 1, 2015); *Robinette v. Ohio Health Outreach Labs*, No. 2:16-CV-406, 2016 WL 5421001, at *1 (S.D. Ohio Sept. 29, 2019); *Robinette v. Lazzerni*, No. 5:15-cv-2726, 2016 WL 931061, at *1 (N.D. Ohio Mar. 11, 2016).

prior to the EEOC filing as well. In fact, it was a "disciplinary action alleging [Robinette] was rude to a patient" that prompted her initial EEOC filing.

This is not a case where the Court can infer retaliation because Robinette's situation took an abrupt turn for the worse after her EEOC filing. Instead, Robinette's grievances date back to her initial interview with Promedica and continued throughout her employment with the defendants. In fact, defendants offered Robinette several jobs—at least one of which she declined—*after* she filed her EEOC charge. (*See* Compl. at 11–12.) Robinette's own, conclusory assertions of retaliation, unsupported by specific alleged facts, are insufficient to support a plausible Title VII retaliation claim. *See, e.g., Sosby*, 211 F. App'x at 387 (holding that a plaintiff failed to demonstrate causation where she relied on nothing more than the fact that she was terminated after she filed a charge of discrimination).

## III. Conclusion

For all the foregoing reasons, this case is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). Robinette's motion to proceed *in forma pauperis* is granted (Doc. No. 2) and her pending "motion for review of case status (Doc. No. 3) is denied as moot.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: February 19, 2020

                                                **HONORABLE SARA LIOI**
                                                **UNITED STATES DISTRICT JUDGE**